# IN THE COURT OF APPEALS OF IOWA

No. 22-0873
Filed July 20, 2022

**IN THE INTEREST OF A.R.,**
**Minor Child**

**B.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

John J. Bishop, Cedar Rapids, attorney for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kimberly Ann Opatz, Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This is a termination-of-parental-rights proceeding in which the juvenile court terminated the rights of both parents. The child was two years old at the time of the termination hearing. Only the father appeals, so our discussion focuses primarily on him.

The family came to the attention of the Iowa Department of Human Services (DHS) because of reports that the parents were using illegal drugs while caring for the child and the father assaulted someone in the child's presence. The DHS investigation uncovered concerns about the family's unstable housing and allegations that the father had sexually abused other children. The State started child-in-need-of-assistance (CINA) proceedings, and the juvenile court adjudicated the child to be a CINA. At the time of the CINA dispositional hearing, despite the noted concerns, the child remained in the parents' custody in the hope that services could enable the child to remain there. As part of the CINA adjudication and disposition, the father was ordered to cooperate with drug testing and complete a psychosexual evaluation.

Following disposition, the family rarely contacted their service providers, and the father did not participate in drug testing or complete a psychosexual evaluation. About two months after the dispositional hearing, the father contacted the DHS and requested that the child be placed in foster care because the parents were homeless and unable to care for him. The juvenile court ordered the child removed from the parents' custody. The child was placed in foster care. Upon removal, the child was discovered to be undernourished.

Following the child's removal and placement in foster care, the father failed to consistently contact and meet with providers. He went several months without having a visit with the child. The child's foster parents attempted to assist in facilitating the visits, but the father acted inappropriately and aggressively, so that assistance stopped.

In addition to the visitation concerns, the father failed to maintain stable housing throughout DHS involvement. At the termination hearing, the father testified he lived in the basement unit of a residence. He planned to stay in that location indefinitely, but the owner of the home testified that the arrangement would likely last no more than six months. The father's employment status and ability to financially provide for the child also raised concerns. The father's testimony regarding his employment situation and his situation in general was contradictory, and he admitted he "only tell[s] partial truths." The juvenile court found the father to be "totally lacking in credibility."

The child has remained with a foster family since removal and has been thriving. After months of services being provided, the State filed a petition seeking termination of the parents' rights. The mother consented to termination of her rights. The father resisted. Following a termination hearing, the juvenile court terminated the rights of both parents. The father appeals. He contends the State failed to prove the statutory grounds for termination and that termination is not in the child's best interests.

## I.    Standard and Scope of Review

We review termination-of-parental-rights rulings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). We give weight to the juvenile court's fact findings

and credibility determinations, but we are not bound by them. *Id.* at 522–23. Clear and convincing evidence must support the grounds for termination. *Id.* at 523.

Our review of termination-of-parental-rights proceedings follows a three-step analysis. *In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021). We first determine whether a ground for termination has been established under Iowa Code section 232.116(1) (2022). *Id.* Next, we consider whether termination is in the child's best interests using the standards set by Iowa Code section 232.116(2). *Id.* Finally, we consider whether an exception in section 232.116(3) should be applied to preserve the parent-child relationship. *Id.* "However, if a parent does not challenge a step in our analysis, we need not address it." *In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa Ct. App. Mar. 2, 2022) (quoting *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020)).

## II. Analysis

As mentioned, the father raises challenges to only the first two steps of the analysis on appeal. We address them separately.

### A. Statutory Ground

The father's rights were terminated pursuant to Iowa Code section 232.116(1)(h). Termination is permitted on this ground upon proof of four elements:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The father concedes the first three elements. He challenges only the fourth. He asserts the child could have been returned to his custody at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

Following our de novo review, we agree with the juvenile court that the child could not be safely returned to the father. The DHS had good reason to be concerned about the father's drug use, so he was ordered to undergo testing. The father failed to cooperate with drug testing, which permits a conclusion that test results would be positive. *See In re B.C.-S.*, No. 21-1817, 2022 WL 946994, at *1 (Iowa Ct. App. Mar. 30, 2022). His failure to submit to drug testing perpetuated concerns regarding his sobriety.

The father's history raised concerns of sexual abuse of children and prompted the need for a psychosexual evaluation, but the father refused to get one. This refusal added to concerns for the child's safety.

The father also continued to be aggressive toward service providers and the child's foster parents, and he failed to engage in services generally. *See In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015) (affirming termination when the parent failed to make genuine efforts to comply with the case plan). This behavior contributed to the father being limited to supervised visits, and he then failed to attend all but "a couple" of those. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The parent] failed to progress toward

reunification over the life of this case. [The parent] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the [parent]'s care.").

Finally, the father's inability to provide a home or financially provide for the child's basic needs supports the conclusion that the child could not be returned to his custody. *See In re M.C.*, No. 17-1184, 2017 WL 4315079, at *2 (Iowa Ct. App. Sept. 27, 2017) (considering unstable housing as a factor in determining whether a child can be returned home); *In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (finding a parent's "economic instability and concomitant inability to meet the most basic needs of [their] children" to be a basis for terminating parental rights). While the father claims to have steady employment and stable housing, the only evidence supporting that claim is his own testimony, which was remarkably inconsistent and contradictory, leading to the juvenile court's conclusion that the father's testimony was "totally lacking in credibility." Following our review, the evidence establishes that the father was unable to provide adequate housing or financial support for the child.

The child could not be safely returned to the father's custody at the time of the termination hearing. As a result, we find the State proved this statutory ground for termination of the father's parental rights.

## B. Best Interests

The father contends termination is not in the child's best interests. The framework set out in Iowa Code section 232.116(2) requires the court, in contemplating the child's best interests, to give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of

the child, and to the physical, mental, and emotional condition and needs of the child."

For many of the same reasons why the child could not be returned to the father's custody, we conclude termination is in the child's best interests. "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)). Looking at the father's past performance, we note that the father failed to exhibit any meaningful progress in the areas of concern that led to the initial DHS and court involvement. Concerns about drug abuse and sexual interest in children remained unchecked.

The father also failed to do as basic a task as visiting the child regularly. As a result, there is, at best, only a limited bond between the father and child. In contrast to how he was doing in the parents' custody, the child is now thriving in the care of the foster family. *See* Iowa Code § 232.116(2) (giving favorable consideration in the best-interest analysis to a child's favorable integration into a foster family). This fact further supports the conclusion that terminating the father's parental rights is in the child's best interests.

## III. Conclusion

The State proved a statutory ground for termination, and termination is in the child's best interests. Accordingly, we affirm the decision of the juvenile court.

**AFFIRMED.**